CITY NAT. BANK OF TIFFIN, OHIO, v. PENNYPACKER et al.

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

No. 57.

BILLS AND NOTES (§ 537*)—ACTION ON NOTE—DEFENSES—SUFFICIENCY OF EVIDENCE.

Evidence *held* wholly insufficient to sustain the defense of fraud by the payee of a note in an action thereon by an indorsee for value before maturity, or to show that plaintiff was affected by the fraud if it existed, and the submission of the case to the jury *held* error.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1865; Dec. Dig. § 537.*]

In Error to the Circuit Court of the United States for the Western District of New York.

Action by the City National Bank of Tiffin, Ohio, against William G. Pennypacker, Jr., and others. Judgment for defendants, and plaintiff brings error. Reversed.

Writ of error to a judgment entered on the verdict of a jury in favor of the defendant sued upon his own promissory notes.

Lewis & Carroll (W. C. Carroll, of counsel), for plaintiff in error.
Gibbons & Pottle (F. Gibbons and Henry W. Pottle, of counsel), for defendants in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The City National Bank of Tiffin, Ohio, discounted two notes of the defendant Pennypacker made to the order of A. Bruner & Sons and by them indorsed. The bank made out a prima facie case upon proving the notes and offering them in evidence. The defendant was then put upon his defense, and he relied upon two defenses, viz., first that Bruner & Sons had obtained the notes as an advance upon the agreement that their proceeds should be applied to the purchase of timber to enable them to carry out their contract with the defendant to furnish him barrel hoops, but that they had diverted the same to other purposes; second, that Bruner & Sons, knowing themselves to be insolvent, had obtained the notes without any intention of carrying out their contract, and that the plaintiff had full knowledge, actual or constructive, of the facts constituting both of these defenses when it discounted the notes.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The transactions between Bruner & Sons and defendant material to this inquiry are to be found in the following correspondence:

"December 28, 1906.

"Mr. W. G. Pennypacker, Jr., Buffalo, N. Y.—Dear Sir: Would you entertain the proposition to advance us from $3,000.00 to $3,500.00 on account? We are in the midst of our timber buying season and are putting so much money in timber, that we are having a hard time to keep our bank account on the right side. If you can see your way clear to grant this favor it will be greatly appreciated, but if you cannot consistently do so, we shall have to look elsewhere.

"Yours very truly, A. Bruner & Sons."

"Jan. 2d, 1907.

"Messrs. A. Bruner & Sons. Tiffin, Ohio—Gentlemen: We have your letter of the 28th and in reply would say that while I do not, as a rule, make advances on material which I have purchased, yet if it will be an accommodation to you, I would be willing to do as follows: send you three notes of $1,000 each, payable in two, three and four months. You can discount this paper at the bank and ship stock against it. Will you kindly advise how soon you will have 6'4" hoops in shape to go forward. I can send you several orders for this stock. Please advise and very greatly oblige,

"Yours very truly, W. G. Pennypacker, Jr."

"Jan. 4, 1906.

"Mr. W. G. Pennypacker, Jr., Buffalo, N. Y.—Dear Sir: We are in receipt of your valued favor of the 2d inst. and have noted the same. We desire to express our thanks for your kindness in this matter. We note your proposition to give us your notes as follows: one for $1,000.00 due in two months, one for the same amount due in three months and one for the same amount due in four months. Now, by this arrangement we would be paying interest on some paper that we do not think we would otherwise have to do. Now can't you arrange to give us two notes for $1,500.00 each due in sixty days and ninety days respectively, or better still one note for $2,000.00 due in sixty days and one note for $1,000.00 due in ninety days? By this arrangement we would save from $7.00 to $10.00 interest, which is quite an object to us, and we presume will be equally agreeable to you. However, if you wish the first arrangement, presume that we can handle the matter all right in that manner. Whichever way you decide, will you kindly give the matter prompt attention, obliging,

"Yours very truly, A. Bruner & Sons."

"Can ship you some 6'4" hoops by the end of the month."

"Jan. 7th, 1907.

"Messrs. A. Bruner & Sons, Tiffin, Ohio—Gentlemen: I have your letter of the 4th inst., and have carefully noted contents. Now it occurs to me that you will not be able to ship stock fast enough to take care of note due in two months for $2,000.00.. I have therefore drawn a note due 60 days from date for $1,000.00 and a note due in ninety days from date for $2,000.00, making in all paper enclosed amounting to $3,000.00. Please get the 6'4" hoops ready and I think you already have shipping instructions for these. If not, kindly advise me and I will send you additional orders.

"Yours truly, W. G. Pennypacker, Jr."

We discover nothing whatever in this correspondence to show the agreement alleged by the defendant as to the application of the proceeds of the notes, so that this defense needs no further consideration.

In respect to the second defense, the proof shows that, at the time Bruner & Sons applied to the defendant for the advance, they were in great need of money, and, as it proved, were insolvent. But it also appeared that they had a going business, several mills in operation.

one not entirely completed, from which they expected to earn a profit of $20,000 a year, and a stock of 1,000,000 feet of timber on which only $1,000 was due. There is no proof other than that of their insolvency to show that Bruner & Sons did not intend to carry out their contract with the defendant when they received the advances from him.

In every action at law there is a preliminary question for the court, viz., whether there is enough evidence to justify the submission of the case to the jury. Where fraud is alleged, there must be enough evidence to justify a reasonable inference of an intent to cheat. Everything that was done in this case being consistent with honesty, we think the court should have withheld the case from the jury. This disposes of the second defense.

But conceding, for the purposes of argument, that there was enough evidence, as between Bruner & Sons and the defendant, to sustain a reasonable inference of an intent upon the part of Bruner & Sons to cheat the defendant, still the bank, being a holder for value, would not be affected thereby unless it had actual or constructive notice. On this point the only proof was that, when the defendant's notes were discounted by the plaintiff, Bruner & Sons were indebted to it in a large sum on notes not due, that their bank account had been overdrawn, and that about one-half the proceeds of the discount of the notes was applied by the plaintiff bank to cover the overdraft. The bank may be admitted to have been anxious about the solvency of Bruner & Sons, or even to have thought them insolvent, and for that reason eager to make them cover their overdraft, without any inference following that it knew that they had obtained the notes which it was discounting from the defendant, with the intent to defraud him. If business men in financial straits when obtaining credit and banks when discounting commercial paper were to be subjected to the Counsels of Perfection contended for by the defendant, few commercial embarrassments could be surmounted and negotiable paper would lose much of its value. Without considering the evidence in greater detail or various other exceptions taken at the trial, we hold that there was no evidence justifying the submission of the question of good faith of Bruner & Sons or of the plaintiff to the jury, and that a verdict should have been directed for the plaintiff.

Judgment reversed, with costs.